IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
Harrisonburg Division

NOBLE SUPPLY & LOGISTICS, LLC,

        Plaintiff,

v.                                    Case No.: 5:23-cv-00065-EKD

REBECCA CURRY,

        Defendant.

## MEMORANDUM OF LAW IN IN SUPPORT OF MOTION TO DISMISS COMPLAINT PURSUANT TO RULE 12(B)(6) OF THE FEDERAL RULES OF CIVIL PROCEDURE

      Defendant, Rebecca Curry ("Ms. Curry"), by and through undersigned counsel, sets forth the following as her Memorandum of Law in Support of Defendant's Motion to Dismiss Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

### INTRODUCTION

      Noble Supply & Logistic, LLC ("Noble") is attempting to enforce a Confidentiality and Anti-Piracy Agreement (the "CAPA") that is, on its face, fatally overly broad and not narrowly tailored to protect Noble's legitimate business interest. The non-compete provisions of the CAPA, especially as applied by Noble, are so broad as to prohibit Ms. Curry from working in virtually any capacity at her new employer. While Noble cites to provisions in the CAPA that deal with the non-solicitation of customers and the non-solicitation of employees and contractors, there are no factual allegations that implicate any of those provisions. In short, Noble is overreaching, and its Complaint must be dismissed for failure to state a claim upon which relief may be granted.

1

## STATEMENT OF FACTS

The Parties have already briefed the arguments on both sides of the Motion for Temporary Restraining Order. That briefing contained extensive references to facts outside the four corners of the Complaint. For the purposes of this Motion, Ms. Curry will confine herself to those facts that they Court may consider on a Motion to Dismiss.

Noble is engaged in the provision of integrated supply, procurement, and logistics solutions to the US Government and private sectors. (Verified Compl., Dkt. No. 1 ¶11,) Noble's business is vast, and includes supplying its customers "with everything from industrial products, construction equipment, office furniture and supplies, personal protective equipment, military and law enforcement gear, appliances, electronics, to food service and janitorial supplies." (Verified Compl., Dkt. No. 1 ¶13)

In 2010, Ms. Curry began work for a company called Tactical & Survival Specialists, Inc. ("TSSi"). (Verified Compl., Dkt. No. 1 ¶ 26) As part of her employment with TSSi, she signed the CAPA. *Id.* At that time, TSSi was a competitor of Noble and SupplyCore, in at least in a portion of the relevant markets. (Verified Compl., Dkt. No. 1 ¶58) Ms. Curry worked for TSSi in various capacities from 2010 until March of 2021 when TSSi was acquired by Noble. (Verified Compl., Dkt. No. 1 ¶46)

At Noble, Ms. Curry was a Director of Category Management for the Tactical/ Medical Market segment. (Verified Compl., Dkt. No. 1 ¶¶ 1, 65) Noble described her job duties as being "responsible for developing and maintaining vendor strategy to align with Noble's objectives." (Verified Compl., Dkt. No. 1 ¶47) Per Noble, her job duties included "developing strong vendor relationships, negotiating business terms with vendors, and overseeing supply chain management to meet contractual, price, delivery, and quality targets, and obtain competitive advantages for

Noble with pricing, terms and conditions." *Id.* In the final year of her employment with Noble, Ms. Curry "was directly responsible for managing numerous vendor relationships" in seven US states and the United Kingdom. (Verified Compl., Dkt. No. 1 ¶51)

Ms. Curry left Noble in August, 2023. (Verified Compl., Dkt. No. 1 ¶1) Shortly thereafter, she began work for SupplyCore. *Id.* Even before being contacted by Noble, SupplyCore took steps to ensure that Ms. Curry would not work in the Tactical Market Segment, as that was the market segment in which she worked for Noble. (Verified Compl. Exs. B, C, Dkt. Nos. 1-3, 1-4)

**The Underlying Agreement (the CAPA)**

While at TSSi, Ms. Curry executed the CAPA. (Verified Compl., Dkt. No. 1 ¶ 9.) As part of the CAPA, Noble also sought to limit Ms. Curry's ability to solicit Customers. Specifically, the CAPA read:

> … during Employee's employment with the Company, and for a period of eighteen (18) months after the separation of the Employee's employment with the Company for any reason, whether voluntary or involuntary, [she] will not, directly or indirectly, sell to, service and/or in any way solicit (in person, telephonically, through e-mail and/or through any other medium or person), for the purpose of selling or providing products or services competitive with the products and services of the Company, any person or entity that was a client or customer of the Company, or was a prospective client or customer of the Company (meaning any person or entity that was actively solicited by the Company), during the twelve months prior to the date of the Employee's separation from the Company, with which the Employee had "material contact" (which is defined as being directly involved in the solicitation, sale or quotation of the Company's products or services), or about which the Employee has "material knowledge" (which is defined as having material and substantive knowledge of the Company's efforts to solicit, sell to, or quote the Company's products or services to the prospect or customer, or of the services provided to the customer by the Company).

> (Verified Compl. Ex. A, Dkt. No. 1-2 ¶ 3)

Noble further attempted to limit the ability to solicit employee or contractors. That provision read:

> … during the Employee's employment with the Company, and for a period of eighteen (18) months after the separation of [her] employment from the Company for any reason, voluntary or involuntary, [she] shall not, either directly or indirectly, recruit for placement or employment, or induce to terminate his or her employment with the company, any person who is then employed by the Company.

> (Verified Compl. Ex. A, Dkt. No. 1-2 ¶ 4)

The provisions of the CAPA most relevant to Noble's claims relate to the general duty of loyalty, and the general prohibition on utilizing confidential information. Noble sought to preclude Ms. Curry from engaging "in any acts in competition with the Company, or that may be harmful to the Company's interests." (Verified Compl. Dkt. No. 1 ¶ 29) This preclusion was without limitation on function, time or geography.

Noble also sought to enforce a provision that read "During his employment with the Company, and for a period of thirty-six months after the separation of the Employee's employment with the Company for any reason, whether voluntary or involuntary, the Employee agrees not to use or disclose, other then [sic] for the benefit of the Company in the course of his duties for the Company, the Company's Confidential and Proprietary Information, regardless of whether the Confidential or Proprietary Information was in hard copy or other form, or contained in the Employee's memory, or derived from his experience." (Verified Compl. Ex. A, Dkt. No. 1-2 ¶ 2)

And most directly related to Noble's current claims, the non-competition covenants read, in relevant part:

> 5. <u>Non-Competition.</u> Employee acknowledges that he has and will have access to and knowledge of highly confidential and proprietary information regarding the Company including, for example, the Company's profits, margins, cost structure, key employees, marketing strategies, finances, customer and vendor relationships, and growth plans. Hence, in order to

4

protect the company's legitimate interests in its highly valuable information *Employee covenants and agrees that he will not, during Employee's employment with the Company, and for a period of twelve (12) months after the separation of his employment from the Company for any reason, voluntary or involuntary, engage in the same or substantially similar services or work as he performs for the Company for himself, or for any business or other entity, that is competitive with the business of the Company, within a geographic area comprised of the territories assigned to Employee and for which he had responsibility during the twelve months immediately prior to the separation of his employment from the Company.*

(Verified Compl. Ex. A, Dkt. No. 1-2 ¶ 5) Emphasis added.

Plaintiff now claims, without proof or allegations beyond merely pleading the elements of the alleged offense, that Ms. Curry is violating these covenants. Because there are no substantive allegations that Ms. Curry took or has used Confidential Information, and because the non-compete provision is facially and legally invalid, the Court must dismiss the Complaint.

## THE APPLICABLE STANDARD

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party of N.C. v. Martin,* 980 F.2d 943, 952 (4th Cir. 1992) (citing 5A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1356 (1990)). To survive Rule 12(b)(6) scrutiny, a complaint must contain sufficient factual information to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007); *see also* Fed. R. Civ. P. 8(a)(2) ("A pleading that states a claim for relief must contain ... a short and plain statement of the claim showing that the pleader is entitled to relief."). Mere labels and conclusions declaring that the plaintiff is entitled to relief are not enough. *Twombly,* 550 U.S. at 555, 127 S.Ct. 1955. Thus, "*naked assertions of wrongdoing necessitate some factual enhancement within the complaint to cross the line between possibility*

*and plausibility of entitlement to relief.*" *Francis v. Giacomelli,* 588 F.3d 186, 193 (4th Cir. 2009) (emphasis added).

A complaint achieves facial plausibility when the facts contained therein support a reasonable inference that the defendant is liable for the misconduct alleged. *Twombly,* 550 U.S. at 556, 127 S.Ct. 1955; *see also Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). This analysis is context-specific and requires "the reviewing court to draw on its judicial experience and common sense." *Francis,* 588 F.3d at 193. The Court must assume all well-pleaded factual allegations to be true and determine whether, viewed in the light most favorable to the plaintiff, they "plausibly give rise to an entitlement to relief." *Iqbal,* 556 U.S. at 676-79, 129 S.Ct. 1937.  This principle applies *only* to factual allegations, however, and "a court considering a motion to dismiss can choose to begin by identifying the pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Iqbal,* 556 U.S. at 679, 129 S.Ct. 1937.

"Although a motion pursuant to Rule 12(b)(6) invites an inquiry into the legal sufficiency of the complaint, not an analysis of potential defenses to the claims set forth therein, dismissal nevertheless is appropriate when the face of the complaint clearly reveals the existence of a meritorious affirmative defense." *Occupy Columbia v. Haley,* 738 F.3d 107, 116 (4th Cir. 2013) (quoting *Brockington v. Boykins,* 637 F.3d 503, 506 (4th Cir. 2011)).

Finally, in deciding a motion under Fed. R. Civ. P. 12(b)(6), a court may consider the facts alleged on the face of the complaint, as well as "matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint." *Moore v. Flagstar Bank,* 6 F.Supp.2d 496, 500 (E.D. Va. 1997) (quoting 5A Charles A. Wright & Arthur R. Miller, Federal Practice & Procedure § 1357 (1990)). A court may also look to documents attached to the

complaint and those incorporated by reference without converting a Rule 12(b)(6) motion into a Rule 56 motion for summary judgment. *See Pueschel v. United States,* 369 F.3d 345, 353 n. 3 (4th Cir. 2004) (citations omitted). In the event of conflict between the bare allegations of the complaint and any attached exhibit, the exhibit prevails. *Fayetteville Investors v. Commercial Builders, Inc.,* 936 F.2d 1462, 1465 (4th Cir.1991).

## ARGUMENT

### There is no Allegation that Ms. Curry Solicited
### Employees, Contractors or Customers

The Complaint lists a single claim for relief – breach of contract. While it is unclear whether the Plaintiff claims that all of the provisions listed, above were breached, (see Verified Compl. Dkt. No. 1 ¶ 85) there are no specific allegations that Ms. Curry had any contact whatsoever with employees or contractors, so a claim based on that provision must fail.

Similarly, there are allegations that Ms. Curry was responsible for vendor relationships within the tactical market segment, and that she may have had some incidental contact with vendors outside of that segment, the CAPA specifically prohibits solicitation of *customers* not vendors. (Verified Compl. Ex. A, Dkt. No. 1-2 ¶ 3)

The non-solicitation agreement must be construed in favor of the employee; therefore, any claim based on the prohibition to solicit customers must fail.

### There is no Allegation that Ms. Curry Took or Used Confidential Information

The Complaint is void of any allegation that Ms. Curry took or used any confidential and proprietary information. There are references to her having access to certain information. (see Verified Compl. Dkt. No. 1 ¶ 28) There is reference to the potential damage that could be done if she would use confidential and proprietary information. *Id.* But there is no allegation that she actually took or used any such information. In fact, the evidence that Plaintiff put in the record

7

actually proves the opposite – that SupplyCore and Ms. Curry have agreed not to have her use any of that information. (Verified Compl. Exs. B, C, Dkt. No. 1-3, 1-4).

Noble's allegations, though carefully not labeled as such, invite the Court to engage in speculating that Ms. Curry will inevitably use confidential and proprietary information to perform her duties at SupplyCore. But Virginia does not adhere to the inevitable disclosure doctrine. *See, e.g., Atlantic Diving Supply, Inc. v. Basnight,* No. 2:22cv298, 2022 WL 5568083 (E.D. Va. Sept. 21, 2022); *Gov't Tech. Servs., Inc. v. IntelliSys Tech. Corp*., 1999 WL 1499548, at *1 (Va. Cir. 1999) ("Virginia does not recognize the inevitable disclosure doctrine."). Noble cannot use inevitable disclosure to expand the scope of the CAPA, or any purported obligations under it.

The Court should decline Plaintiff's subtle, but unmistakable, invitation for the Court to engage in that analysis.

### The Non-compete Provisions are Unenforceable as a Matter of Law

A three-part test determines the validity of restrictive covenants. The inquiries are:

> (1) Is the restraint, from the standpoint of the employer, reasonable in the sense that it is no greater than is necessary to protect the employer in some legitimate business interest?

> (2) From the standpoint of the employee, is the restraint reasonable in the sense that it is not unduly harsh and oppressive in curtailing her legitimate efforts to earn a livelihood?

> (3) Is the restraint reasonable from the standpoint of sound public policy?

*Roto-Die Co., Inc. v Lesser*, 899 F.Supp 1515, 1519 (WD VA 1995) *citing Blue Ridge Anesthesia & Critical Care, Inc. v. Gidick,* 239 Va. 369, 389 S.E.2d 467, 469 (1990).

The employer bears the burden of proving the restraint is reasonable. *Grant v. Carotek, Inc.,* 737 F.2d 410, 411 (4th Cir. 1984).

8

In Virginia, non-compete clauses are disfavored because they are restraints on trade.[1] Virginia courts take this view because covenants not to compete, by their nature, restrain competition, and curb the "fundamental right of individuals to seek success in our free-enterprise society." 15-80 *Corbin on Contracts* §§ 80.1, 80.4 (2006) (stating that in entering into a covenant not to compete, "[t]he parties' purpose is to impose a restraint upon the trade or commerce of third persons only insofar as being deprived of the opportunity to trade with the party to the contract who has voluntarily agreed to be restrained. In every case, the promisee's purpose, without doubt, is to rid itself of the competition of the promisor"); *see also Clinch Valley Physicians, Inc. v. Garcia,* 243 Va. 286, 289, 414 S.E.2d 599 (Va. 1992) (stating that because a covenant not to compete "restricts the employee in the exercise of a gainful occupation, it is a restraint in trade, and it is carefully examined and strictly construed"). Given that such non-compete covenants are disfavored in Virginia, they "have been upheld only when employees are prohibited from competing directly with the former employer or through employment with a direct competitor." *Omniplex World Servs. Corp. v. U.S. Investigations Servs. Inc.,* 270 Va. 246, 618 S.E.2d 340, 342 (Va.2005).

With respect to employment with a direct competitor, non-compete clauses that "restrict the former employee's performance of functions for his new employer [are upheld] only to the extent that the proscribed functions are the *same* functions as were performed for the former employer." *Cantol, Inc. v. McDaniel,* No. 2:06-cv-86, 2006 WL 1213992 at *4, 2006 U.S. Dist.

---

[1] *See, e.g., Simmons,* 544 S.E.2d at 678. Construction *Materials v. Kirkpatrick Concrete,* 631 So.2d 1006, 1009 (Ala.1994); *DeCristofaro v. Security Nat'l Bank,* 664 P.2d 167, 169 (Alaska 1983); *Norlund v. Faust,* 675 N.E.2d 1142, 1154 (Ind.App.1997); *American Broadcasting Companies, Inc. v. Warner Wolf,* 52 N.Y.2d 394, 438 N.Y.S.2d 482, 420 N.E.2d 363, 367-68 (1981); *Single Source Packaging, LLC v. Cain,* No.2003-CA-14, 2003 WL 22064129, at *6, 2003 Ohio App. LEXIS 4248, at *17 (Ohio Ct.App.2003); *Outfitters Satellite, Inc. v. CIMA, Inc.,* No. M2003-02074-COR3-CV, 2005 WL 309370, *2, 2005 Tenn.App. LEXIS 86, at *5 (Tenn.Ct.App.2005); *Morse Wholesale Paper Co. v. Talley,* No. 14-05-01180-CV, 2006 WL 995262, at *2, 2006 Tex. App. LEXIS 7196, at *5 (Tex.App.2006); Restatement (Second) of Contracts § 188 (1981).

LEXIS 24648 at *14 (E.D. Va. April 28, 2006) *(citing Omniplex,* 618 S.E. 2d at 342) (emphasis added).

In particular, the analysis of these interrelated factors "requires consideration of the restriction in terms of function, geographic scope, and duration." *Simmons v. Miller,* 261 Va. 561, 544 S.E.2d 666, 678 (2001). Importantly, courts applying this three part test must take the non-compete provision as written; there is no authority for courts to "`blue pencil' or otherwise rewrite the contract" to eliminate any illegal overbreadth. *See Pais v. Automation Products,* 36 Va. Cir. 230, 239 (1995). Thus, where a non-compete clause is ambiguous, that is, it is susceptible to two or more differing interpretations, one of which is functionally overbroad, and thus unenforceable, the clause fails even though it may be reasonable as applied to the specific circumstances presented. *See id.* at 257-58.

As one Court has held:

> To hold otherwise would amount to a "blue-penciling" of the contract and would permit an *"in terrorem* effect on an employee, who must try to interpret the ambiguous provision to decide whether it is prudent, from a standpoint of possible legal liability, to accept a particular job or whether it might be necessary to resist plaintiffs efforts to assert that the provision covers a particular job." *Id. (citing Meissel v. Finley,* 198 Va. 577, 95 S.E.2d 186, 188 (1956)). As one trial court put it, an employer may try to limit the *in terrorem* effect of an ambiguous non-compete clause by interpreting it narrowly, but such a "request for limited relief cannot cure what is otherwise a defective non-competition agreement." *Cliff Simmons Roofing, Inc. v. Cash,* 49 Va. Cir. 156, 158 (Va. Cir.1999).
>
> *Lanmark Technologies v. Canales*, 454 F. Supp 2d 524, 529 (ED Vir. 2006).

The validity of a non-compete is a "threshold question;" therefore, if a noncompete agreement is invalid, the court need not consider whether a party in fact breached the agreement. *O'Sullivan Films, Inc. v. Neaves,* 352 F. Supp. 3d 617, 623 (WD Vir. 2018).

While validity is a threshold question, as noted above, courts "cannot adjudicate the enforceability of a noncompete in a factual vacuum." *Id.* at 624 (citation omitted). The court must

consider the "function, geographic scope, and duration" of the restrictive covenant. *Home Paramount Pest Control Cos. v. Shaffer,* 718 S.E.2d 762, 764 (Va. 2011).

### Noble's Non-Compete Fails the Function Test

Regarding the restrictive covenant's function, the Court must consider "whether the prohibited activity is of the same type *that is actually engaged in by the former employer*." *Home Paramount,* 718 S.E.2d at 764 (emphasis added). A valid noncompete provision prohibits "an employee from engaging in activities that actually or potentially compete with the employee's former employer." *Omniplex,* 618 S.E.2d at 342.

Noble seeks more protection than is necessary to protect its legitimate business interests. Here, the non-compete provision seeks to prohibit Ms. Curry from working "in the same or substantially similar services or work as [s]he performs for the Company." (Verified Compl. Ex. A, Dkt. No. 1-2 ¶ 5) There is no limitation on *when* she performed work for the prior Company.

To illustrate the difference, the CAPA's geographic requirement contains language which limits the geographic restriction to "the territories assigned to Employee and for which [s]he had responsibility *during the twelve months immediately prior to the separation of [her] employment* from the Company." (Verified Compl. Ex. A, Dkt. No. 1-2 ¶ 5) The non-compete provision contains no such limitation. Noble, as the drafter, could have chosen to place a similar restriction on the function component of the non-compete covenant as well. It chose not to.

Ms. Curry worked at TSSi in a variety of roles for eleven years prior to Noble's acquisition. At Noble, by its own description, Ms. Curry's "primary commodity categories" were tactical and medical. (Verified Compl. Dkt. No. 1 ¶65) Noble's contends that "her work touched other commodity categories and related vendors through trade shows, Noble industry shows, and discussion with team members and sales and market leaders." *Id.* But it is Noble's burden to

demonstrate that the covenant is narrowly tailored to obtain only that protection that its legitimate business interests require.

Ms. Curry is then left to wonder what function may she perform at SupplyCore? The CAPA contains no limitation on the type of work from which the employee is prohibited from engaging. While the CAPA uses the phrase "same or substantially similar services," there is no limit on *when* the employee engaged in those services. On its face, the provision seeks to prohibit the employee from performing any job that the employee performed for the prior employer – no matter how long ago, or how relevant (or irrelevant) the past positions.

Consider this example. An employee worked for an employer for decades. She began in the mailroom and worked her way up through a wide variety of positions to an executive position. The language of the non-compete at issue here, would preclude working in the mailroom of a competing company. That is certainly not "narrowly tailored" to provide only the protection to which the prior employer is entitled.

Furthermore, the covenant at issue here, does not seek to limit the prohibition to the kind of work that Ms. Curry *actually performed* at Noble. *See Nortec Commc'ns, Inc. v. Lee-Llacer,* 548 F. Supp. 2d 226, 230 (E.D. Va. 2008) (finding a noncompete covenant unenforceable "because the functions that are proscribed by the non-compete agreement are not limited to the functions that were performed by [the employee]"). There are a number of market segments in which Ms. Curry had no role, or, reading Noble's pleadings generously, she merely "touched on." Reading the CAPA as Noble seeks to enforce it, Ms. Curry would be prohibited from working in market segments with which she had no appreciable contact. Noble's business is vast, by its own admission. Noble is attempting to keep Ms. Curry out of markets in which she did not work.

This restriction is like the restriction the Virginia Supreme Court struck down in *Richardson v. Paxton Company,* 203 Va. 790, 127 S.E.2d 113 (1962). There, a non-competition agreement was found to be unduly harsh, overbroad, and unenforceable because it prohibited an employee from competing with *any* branch of the employer's business, even though the employee had had no connection with some of those branches. *Id.* at 795, 127 S.E.2d at 117. The same is true here. Noble's reach is so vast, that it is impossible for a single person to "touch" the entirety of its market segments. In fact, the only evidence in the record is that Ms. Curry is not, and need not, engage in the tactical and medical market segment, which is where she worked for Noble, and the only market segment in which Noble has a legitimate business interest to protect. *Id.*

At best, Noble's language is ambiguous. There are multiple reasonable interpretations of the CAPA, at least one of which is overbroad and renders the CAPA unenforceable. Where a non-compete clause is ambiguous, that is, it is susceptible to two or more differing interpretations, one of which is functionally overbroad, and thus unenforceable, the clause fails even though it may be reasonable as applied to the specific circumstances presented. *Lanmark,* 454 F. Supp.2d at 531; *see also Omniplex World Servs. Corp. v. U.S. Investigations Servs., Inc.,* 270 Va. 246, 249, 618 S.E.2d 340 (Va. 2005).

**Noble's Non-Compete Fails the Geographic Test**

Here, while there is a geographic "limitation," it is essentially limitless. The Complaint states at various points that Ms. Curry's territory was "located throughout the United States and beyond, from Washington to Wisconsin, Georgia, Florida, Vermont, Connecticut, New Hampshire, and even the United Kingdom." (Verified Compl, Dkt. No. 1 ¶51) Then it states that Noble's territory is "global." (Verified Compl. Dkt. No. 1 ¶12)

The geographic scope encompassed in this noncompete agreement far exceeds the geographic scope of agreements that Virginia courts have found unenforceable. *See, e.g., Lawrence v. Bus. Commc'ns of Va., Inc.,* No. CH99-1134, 2000 WL 33340626, at \*3 (Va. Cir. Ct. May 5, 2000) (finding a noncompete agreement invalid because its geographic scope of 50 miles applied to each of the employer's locations); *Power Home Solar LLC v Sigora Solar LLC,* Civil Action 3:20-cv-00042 (ED Vir. 2021). The geographic scope that Noble seeks to impose encompasses *at least* the United States and the United Kingdom. Based on Noble's Complaint, it may include the entire planet. It is over broad and in unenforceable.

## CONCLUSION

Noble is attempting to enforce the CAPA in a manner that is fatally overly broad and not narrowly tailored to protect Noble's legitimate business interest. The non-compete provisions of the CAPA, especially as applied by Noble, are so broad as to prohibit Ms. Curry from working in virtually any capacity at her new employer. While Noble cites to provisions in the CAPA that deal with the non-solicitation of customers and the non-solicitation of employees and contractors, there are no factual allegations that implicate any of those provisions. Noble is overreaching, and according to Virginia law, the restrictive covenants must be invalidated, and its Complaint must be dismissed for failure to state a claim upon which relief may be granted.

DATED: November 2, 2023.

Respectfully submitted,

/s/ King F. Tower
King F. Tower (VSB No. 38767)
king.tower@wrvblaw.com
Woods Rogers Vandeventer Black PLC
10 South Jefferson Street, Suite 1800
Roanoke VA 24011
Telephone: (540) 983-7600
Facsimile (540) 983-7711

14

Jeffrey A. Risch (Illinois ARDC NO: 627140)
jrisch@amundsendavislaw.com
Amundsen Davis, LLC
3815 E. Main St., Suite A-1,
St. Charles, IL 60174
Telephone (630) 569-0079

Craig A. Kubiak (WI SBN 1019273)
ckubiak@amundsendavislaw.com
Amundsen Davis, LLC
2800 Enterprise Avenue
Appleton, WI 54913
Telephone: (920) 750-5049

**CERTIFICATE OF SERVICE**

I hereby certify that on this 2nd day of November, 2023, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notice to all counsel of record.

/s/ Craig A. Kubiak

16