IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION

| | | |
|---|---|---|
| NOBLE SUPPLY & LOGISTICS, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Civil Action No. 5:23-cv-00065 |
| v. | ) | |
| | ) | By: Elizabeth K. Dillon |
| REBECCA CURRY, | ) | United States District Judge |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Noble Supply & Logistics, LLC (Noble) brought this action against its former employee, Rebecca Curry, alleging that Curry breached a non-competition provision in an agreement with Noble. Noble has filed a motion for temporary restraining order or preliminary injunction.[1] (Dkt. No. 3.) The matter has been fully briefed and argued before the court. For the following reasons, the court will grant Noble's motion for preliminary injunction.

I. INTRODUCTION

Noble is a provider of "integrated supply, procurement, and logistics solutions" to the U.S. government. It provides services to all branches of the United States military, law enforcement and emergency response agencies, other government organizations, and the defense

---

[1] At the hearing held on the motion, the parties both expressed that they wanted the court to treat the motion as one for a temporary restraining order—not a motion for preliminary injunction—and that they did not intend to present live evidence on the motion. A temporary restraining order differs from a preliminary injunction in that the latter may only be granted upon notice to the adverse party. Fed. R. Civ. P. 65(a). Here, Curry had notice of the hearing and was able to file briefing and present argument. Additionally, the primary difference between the two is that a temporary restraining order preserves the status quo only until a preliminary injunction hearing can be held and no longer, while a preliminary injunction preserves the status quo pending a final trial on the merits. *Hoechst Diafoil Co. v. Nan Ya Plastics Corp.*, 174 F.3d 411, 422 (4th Cir. 1999). Here, neither party indicated that it would present evidence different from, or in addition to, the affidavits already in the record, and they indicated a need to conduct discovery. Moreover, neither party has yet requested a separate hearing on a motion for preliminary injunction. Thus, the court designates its order as a preliminary injunction. If either party seeks to present additional evidence or believes that a modification of the court's order is required, that party may file an appropriate motion.

industry. (Verified Compl. ¶ 11.) Its customers are located throughout the world, and it thus competes on a global scale. (*Id.* ¶ 12.)

One of Noble's main competitors is SupplyCore. SupplyCore performs the same services as Noble and competes for many of the same contracts, vendors, customers, and clients as Noble. (*Id.* ¶¶ 20–21.) SupplyCore and Noble also are both prime vendors on the Defense Logistics Agency's (DLA) Special Operational Equipment Tailored Logistics Support Program contract (the SOE Contract). (*Id.* ¶¶ 20, 22.) The SOE Contract is a ten-year, multi-billion-dollar contract, with indefinite delivery and quantities, which was awarded to Noble, SupplyCore, and four other businesses. Those six businesses compete to obtain contracts under the SOE Contract. (*Id.* ¶¶ 23, 24.)

When Curry was hired in 2010 by Noble's predecessor, Tactical & Survival Specialties, Inc. (TSSi), she entered into an agreement as a condition of her employment titled a "Confidentiality and Anti-Piracy Agreement" (the Agreement). (*See* October 11, 2010 Agreement, Ex. A to Verified Compl., Dkt. No. 1-2.) The Agreement includes confidentiality and non-disclosure covenants, non-solicitation covenants for both customers and employees, and non-competition covenants. (Verified Compl. ¶¶ 26, 29–39 & Agreement ¶¶ 1–5.)

Noble's Verified Complaint discusses all of the covenants, but its breach of contract claim specifically identifies the non-competition covenant as the one breached by Curry. (Verified Compl. 15.) Indeed, in its response to the motion to dismiss, Noble explains that it has discussed and provided background as to the other restrictive covenants "to demonstrate the measures it takes to protect its confidential information and business interests, which is a consideration directly relevant to the enforceability of a non-competition provision. . . . These provisions are also relevant because they impose additional bounds on Curry's conduct at

2

SupplyCore." (Opp'n to Mot. Dismiss 2 n.1, Dkt. No. 29.) Similarly, while the court touches on some of the other provisions and evidence, its primary focus is on the anti-competition covenant, which is the basis of the breach-of-contract claim.[2]

In the non-competition portion of the Agreement, Curry specifically acknowledges that she "has and will have access to and knowledge of highly confidential and proprietary information regarding the Company." (Agreement ¶ 5.)

She thus agrees as follows:

> [I]n order to protect the company's legitimate interests in its highly valuable information Employee covenants and agrees that [she] will not, during Employee's employment with the Company, and for a period of twelve (12) months after the separation of [her] employment from the Company for any reason, voluntary or involuntary, engage in the same or substantially similar services or work as [she] performs for the Company for [herself], or for any business or other entity, that is competitive with the business of the Company, within a geographic area comprised of the territories assigned to Employee and for which [she] had responsibility during the twelve months immediately prior to the separation of [her] employment from the Company.

(*Id.*)

Curry further acknowledges that "this geographic area is reasonable and appropriate because it is the geographic area in which [she] has/had direct responsibility and authority for the Company and because [she] has/had access to confidential and proprietary information of the Company pertaining to customers in this geographic area." (*Id.*) Curry agrees that "this restriction is reasonable and appropriate due to the narrow scope of the Company's business, as a result of which the Employee has ample opportunity to obtain employment without violating the

---

[2] The court notes, though, that there is no evidence that Curry has actually disclosed any confidential information, and both she and SupplyCore deny it. Likewise, Noble does not allege that she has attempted to solicit any Noble employees. SupplyCore also points out that the only "customers" of Noble's are the government agencies to which Noble's vendors supply products, and that Noble only offers specific allegations that she purportedly solicited "vendors," not customers.

terms of this Agreement, and without suffering hardship or duress" and that "neither [she] nor [her] family will suffer irreparable harm as a result of the enforcement of the provisions set forth in this paragraph and in this Agreement." (*Id.*)

Noble contends that the non-competition covenant is necessary because Curry received and had access to (and in some cases developed or directed the development of) specific propriety and confidential information. Possession of such information would give a competitor, such as SupplyCore, an "enormous unfair advantage" by allowing that competitor information to effectively undercut Noble while directly competing against it for contracts. (Mem. Supp. of Mot. Prelim. Inj. 4, Dkt. No. 4.)

In a section titled "Enforcement," the Agreement provides:

> The Employee acknowledges that in addition to an appropriate award for damages, the Company shall be entitled to the entry of a temporary, preliminary[,] and permanent order enjoining further threatened or actual breaches of the Agreement by [her] or any person, firm, or entity with which [she] is associated, without the need to post a bond or other security, and to collect from the Employee all costs of the Company, including reasonable attorney's fees, incurred by the Company in enforcing and/or defending any of the terms or provisions of this Agreement.

(Agreement ¶ 7.) The Agreement further states it is governed by Virginia law and that an action to enforce it must be brought in either a state or federal court in Virginia. (Agreement ¶ 9.)

Curry was employed by TSSi and then Noble from October 2010 through August 2023. She held several positions over the course of her employment. At the time she executed the Agreement in 2010, she was involved with sales, focusing primarily on the tactical market segment. (Curry Decl. ¶ 9, Dkt. No. 19-1.) She became involved with multiple market segments as the business diversified, but after Noble acquired TSSi, each market segment had its own,

4

distinct, category manager, or director. (*Id.* ¶¶ 9–10.) The segments for Noble did not overlap. (*Id.* ¶ 10.)

In her final position, as the Director of Category Management, Noble describes Curry as the director of the tactical market segment and responsible for developing and maintaining vendor strategy. She was tasked with developing strong vendor relationships, negotiating business terms with vendors, and overseeing supply chain management to meet contractual, price, delivery, and quality targets and obtain competitive advantages for Noble with pricing, terms, and conditions. (Verified Compl. ¶ 47.) She worked directly with market and sales leaders as well as the members of the sales and business development teams to assist them with winning business. She also was directly involved in bid and pricing strategy on certain contracts, including the SOE Contract. (*Id.* ¶¶ 44–49.)

Curry disputes some of the characterizations of her duties while at Noble. For example, she states that she was not involved in strategy decision and that "Sales was responsible for their own bids and strategy." (Curry Decl. ¶¶ 19–20.) Curry describes her duties in her "final year plus" as solely dedicated to overseeing the tactical sector. (*Id.* ¶ 13.) She explains that she was required to secure products needed for that market segment and enhancing existing vendor relationships in that segment. (*Id.*)

While still employed by Noble, and before giving notice of her resignation, Curry negotiated and accepted an offer of employment from SupplyCore.[3] Curry notes, though, that she verbally informed her direct supervisor in June 2023 that she had discussed with SupplyCore the possibility of employment, and the supervisor did not object. (Curry Decl. ¶ 21.)

---

[3] During interviews with SupplyCore, Curry denied having a restrictive covenant agreement with Noble, although the Agreement required her to disclose that fact. (Verified Compl. ¶ 55.) Curry apparently contends that she did not recall signing the Agreement with TSSi back in 2010, but Noble gave her a copy in an exit interview. (Curry Decl. ¶ 25.) She then immediately notified SupplyCore about the Agreement. (*Id.*)

Curry's last day of employment with Noble was August 11, 2023. On August 14, she began working for SupplyCore as Director of Vendor Management & Supply Chain. (Verified Compl. ¶ 56.) According to the verified complaint, Curry's duties for SupplyCore are the same as, or substantially similar to, the duties it performed for Noble. (*Id.* ¶ 57.)[4] Curry disputes this to some degree, providing a detailed description of her duties at SupplyCore. (*See* Curry Decl. ¶ 23.) Although her day-to-day duties may be different, and while she emphasizes that she is not working in the tactical segment at SupplyCore, the court agrees with Noble that both her position at Noble and her position at Supply Core, on a general level, involve vendor management for the SOE, onboarding potential vendors, and building relationships with those vendors.

After Noble learned that Curry had accepted a position with SupplyCore, Noble attempted to discuss with Curry and with SupplyCore its concerns about her new employment violating the Agreement. In response, SupplyCore took the position that as long as Curry refrained from vendor management related to tactical gear and medical supplies and instead focused on other commodities for one year, she would not be in breach of the Agreement. (Ex. B to Verified Compl., Dkt. No. 1-3, at 4.) Thus, SupplyCore and Curry entered into an agreement (the SupplyCore Agreement) whereby Curry was prohibited from, among other things: "sharing information on, soliciting, or engaging with any customer or supplier specific to the Tactical Gear and Medical commodity categories or any related commodity categories you have previously managed." (*Id.*) The SupplyCore agreement also prohibited her from having "any contact with customers or suppliers you previously engaged with at Noble" and sharing

---

[4] Curry contends, however, that her duties are different from those she performed for Noble. She also states that she does not work in a sales role and does not solicit sales, and that she does not call on or do business with any vendor she worked with in her last 14 to 18 months at Noble, or any vendor she worked with at Noble in the tactical market segment. (*Id.* ¶ 28.) As discussed in the text, Noble is not satisfied with the arrangement, noting that the non-competition covenant is not limited by market segment.

"related contact information with SupplyCore." (*Id.* at 3.) Curry contends that she has abided by the SupplyCore Agreement.

Noble maintains that Curry's SupplyCore Agreement, even if strictly followed, does not alleviate its concerns or satisfy her obligations under the Agreement. Moreover, Noble notes that the SupplyCore agreement has been ineffective in keeping Curry from competing.

Noble emphasizes that since she signed the SupplyCore Agreement, Curry has aided SupplyCore in directly competing against Noble on the SOE Contract and otherwise. First, in one post to her LinkedIn network, she announced that she had joined SupplyCore. (Ex. C to Verified Compl., Dkt. No. 1-4, at 4.) That post generated responses from many individuals, including at least some vendor contacts. (*Id.* at 4–7.) The comments indicated that people were excited to do business with her at her new company. Then, she reposted at least two SupplyCore marketing posts to her LinkedIn network, encouraging persons in her network to place orders for products, including tactical products, and to stop by SupplyCore's booth at an upcoming conference and exhibition. (*Id.* at 3) Thus, Curry has solicited and promoted SupplyCore SOE Contract sales on social media to her professional network. Noble contends that her network includes contacts at the vendors for which she was responsible at Noble, in her final twelve months of employment. Noble thus maintains that her actions have breached the Agreement with Noble. (Verified Compl. ¶ 68.)

Curry insists that she has only made "general" posts to LinkedIn, that she was "not soliciting business" and that her post about the conference was a "general industry reminder." (Curry Decl. ¶¶ 3335, 40.) She also posits that her first post was merely notifying friends and family of her job change, and that her other two posts were not created by her and she was simply re-posting them. She also addresses directly the individuals identified by Noble as

7

vendor contacts, explains who they are, and emphasizes that, of those that do business with Noble and/or SupplyCore, she did not respond to their comments or forward them to anyone at SupplyCore. (*Id.* ¶¶ 36–41.)

Noble's prayer for relief in its complaint requests that the court grant injunctive relief, requiring Curry "to comply with her obligations under the Agreement" and requests an order temporarily, preliminarily, and permanently enjoining Curry from, for the duration of the restricted period, "engaging in the same or substantially similar services or work for SupplyCore (or any other competitor) as she did for Noble, including managing vendor relations." (Verified Compl. 18–20, ¶¶ A, D.)

In its motion for preliminary injunctive relief, Noble requests that the court temporarily enjoin Curry from "directly or indirectly, for the duration of the twelve-month restricted period, as tolled per [the Agreement]," (1) working for SupplyCore Inc. in the position of Director of Vendor Management & Supply Chain"; (2) "engaging in the same or substantially similar services or work as she performed for Noble for herself, or any other business or entity that is competitive with the business of Noble, within the United States"; or (3) otherwise violating her restrictive covenant obligations" under the Agreement. (Pl.'s Mot., proposed order, Dkt. No. 3-1.)

II.  DISCUSSION

**A. Motion for Preliminary Injunction**

"The traditional office of a preliminary injunction is to protect the status quo and to prevent irreparable harm during the pendency of a lawsuit ultimately to preserve the court's ability to render a meaningful judgment on the merits." *In re Microsoft Corp. Antitrust Litig.*, 333 F.3d 517, 525 (4th Cir. 2003). Preliminary injunctive relief is an extraordinary remedy that

courts should apply sparingly. *See Direx Israel, Ltd. v. Breakthrough Med. Corp.*, 952 F.2d 802, 811 (4th Cir. 1991). The party seeking the preliminary injunction must demonstrate that: (1) it is likely to succeed on the merits at trial; (2) it is likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in its favor; and (4) an injunction is in the public interest. *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20, 22 (2008); *League of Women Voters of N.C. v. North Carolina*, 769 F.3d 224, 249 (4th Cir. 2014). The remedy may be granted only on a "clear showing" of entitlement to relief. *Winter*, 555 U.S. at 22.

For purposes of a motion for preliminary injunction, the court may consider any testimony offered at a preliminary injunction hearing as well as declarations and affidavits submitted by the parties. The Fourth Circuit has determined that a district court ruling on a preliminary injunction "may look to, and indeed in appropriate circumstances rely on, hearsay or other inadmissible evidence when deciding whether a preliminary injunction is warranted." *G.G. ex rel. Grimm v. Gloucester Cty. Sch. Bd.*, 822 F.3d 709, 725–26 (4th Cir. 2016), *vacated and remanded on other grounds*, 137 S. Ct. 1239 (2017).

1. **Likelihood of success on the merits**

First, "plaintiffs seeking preliminary injunctions must demonstrate that they are likely to succeed on the merits." *Pashby v. Delia*, 709 F.3d 307, 321 (4th Cir. 2013) (citing *Winter*, 555 U.S. at 20). "Although this inquiry requires plaintiffs seeking injunctions to make a 'clear showing' that they are likely to succeed at trial," *Real Truth*, 575 F.3d at 345, a plaintiff need not show a certainty of success, *see Pashby*, 709 F.3d at 321.

The court concludes that Noble has shown that it is likely to succeed on the merits of its breach of contract claim. To establish a breach of contract, Noble must prove: (1) a legally enforceable obligation of Curry to Noble, (2) Curry's violation or breach of that obligation; and

(3) injury or damage to Noble caused by the breach of obligation. *See Filak v. George*, 594 S.E.2d 610, 619 (Va. 2004). With respect to the first element, the burden rests on Noble to show that the restrictive covenant extends no greater than necessary to protect its legitimate business interests, is not unduly burdensome on Curry's ability to earn a living, and does not offend sound public policy. *See, e.g.*, *Landmark Tech., Inc. v. Canales*, 454 F. Supp. 2d 524, 528–29 (E.D. Va. 2006). Factors bearing on the reasonableness of the restriction include its function, geographic scope, and duration, *Simmons v. Miller*, 544 S.E.2d 666, 678 (Va. 2001), which the court should "assess . . . together rather than as distinct inquiries," *Preferred Sys. Solutions, Inc. v. GP Consulting, LLC*, 732 S.E.2d 676, 681 (Va. 2012).

Here, the restrictive covenant is limited in duration to 12 months, and Curry does not challenge that portion as unreasonable. As to the geographic restriction, Curry argues in her motion to dismiss that the geographic reach of the clause is overbroad. (Mem. Supp. Mot. to Dismiss 13–14, Dkt. No. 24.) In doing so, however, she fails to acknowledge that the geographic restriction is limited to the areas to which she was assigned and for which she had responsibility in her last twelve months of employment. Moreover, it is undisputed that the marketplace for Noble's products is at least country-wide. Courts have upheld such restrictions in appropriate cases. *E.g.*, *Nat'l Homes Corp. v. Lester Indus., Inc.*, 293 F. Supp. 1025, 1031–32 (W.D. Va. 1968), *aff'd as modified*, 404 F.2d 225 (4th Cir. 1968) (upholding nation-wide geographic restriction where plaintiff's business was national). Indeed, another judge of this court previously explained that "the absence of a geographic limitation is not fatal" where the covenant overall is reasonably limited. *O'Sullivan Films, Inc. v. Neaves*, 352 F. Supp. 3d 617, 624 (W.D. Va. 2018) (collecting authority for same). When considering the function, time, and geographic condition together, then, the court concludes that the geographic condition does not render the

provision overbroad.

Curry's primary challenge is to the function restriction. She contends that it is overbroad and unenforceable under Virginia law because the conduct it enjoins it too broad.[5] She also argues that, as written, Virginia law does not allow courts to "blue pencil or otherwise rewrite the contract" to eliminate overbreadth or to cure ambiguity. (Opp'n to Mot. Prelim. Inj. (Opp'n) 10 (citing *Pais v. Automation Prods.*, 36 Va. Cir. 230, 239, 1995 WL 17049090 (Va. Cir. Ct. 1995)).)

As noted, the restrictive covenant prohibits Curry from "engaging in the same or substantially similar services or work as she performs for the Company . . . for any business, that is competitive with the business of the Company."[6] (Agreement ¶ 5.) Thus, Curry is only prohibited from performing the same or substantially the same services as she did for Noble, if that work is competitive with Noble's business. (*See id.*) According to the complaint and her declaration, Curry performed some sales for Noble and then engaged in vendor management functions. She is now performing substantially similar work for SupplyCore, interacting with and managing vendors. Moreover, her duties involve work that competes with Noble, in that both are trying to obtain the vendors to service the same customers.

---

[5] Curry includes in her brief an argument that the Agreement should be deemed unenforceable because it violates Sections 7 and 8(a)(1) of the National Labor Relations Act. (Opp'n 11.) Curry's counsel admitted at the hearing that he could not cite any cases applying those provisions in this context, and the court has found none, either. Indeed, in the one case where a similar argument was raised, the court ruled that it saw "no clear precedent for the defensive assertion of violations of the NLRA in a contract dispute." *W. Air Charter, Inc. v. Schembari*, No. EDCV17420, 2018 WL 10157139, at *15–16 (C.D. Cal. Nov. 21, 2018). Especially in the absence of any supporting authority, the court does not find this argument persuasive.

[6] The provision limits the geographic area to territories assigned to her and "for which [she] had responsibility during the twelve months immediately prior" to her separation. (Agreement ¶ 5.) Contrary to Curry's interpretation, the court does not read that twelve-month limitation as applying to any other portion of the provision. In particular, the court disagrees with any assertion that the provision means she is only prohibited from performing jobs that she performed in her last twelve months. (*Compare* Opp'n 12.) Indeed, although Curry says "Noble acknowledges as much in its brief," (*id.*), the court does not find any such acknowledgement. Instead, it appears to the court that Noble discusses the duties she performed in her last twelve months in the context of discussing how SupplyCore's limitations placed on Curry were ineffective.

Virginia courts have upheld similar provisions and, in particular, provisions that specifically limit the prohibited work to work performed for another business that competes with the former employer. In *Home Paramount Pest Control Co. v. Shaffer*, 718 S.E.2d 762, 764 (Va. 2011), the Supreme Court of Virginia addressed a provision that stated the employee could not work for two years after his termination for any other pest control company "as an owner, agent, servant, representative, or employee, . . . or in any manner whatsoever" in any of the geographic areas in which he was assigned in his last two years. *Id.* at 763. In striking that provision down as overly broad, the court explained that a valid provision would prohibit "an employee from engaging in activities that would actually or potentially compete with the employee's former employer," but could not prohibit an employee from working for a competitor if he "engage[d] exclusively in activities that do not compete with the former employer." *Id.* at 764–65 (citations omitted). Thus, the provision before it was not valid because it would have forbidden the former employee even from being even a passive investor with the company. By contrast, the non-compete here prohibits only work that directly competes with Noble's business. *See also Blue Ridge Anesthesia & Critical Care, Inc. v. Gidick*, 389 S.E.2d 467, 469 (Va. 1990) (upholding a provision where it did not forbid former employees "from working in *any* capacity for a medical equipment company," only from working in the medical industry in some role which would compete with the former's employer's business). Accordingly, the court concludes that the agreement very likely is enforceable.

Curry appears to argue that so long as she does not perform work in SupplyCore's tactical division and does not have any contact with customers or supplies she previously engaged with at Noble, she is not in violation of the agreement, a position that SupplyCore also has taken in its discussions with Noble. (*See* Verified Compl. ¶ 63 & Ex. B thereto, Dkt. No. 1-

12

2.) To be sure, those restrictions cover *part* of what Curry is prohibited from doing by the Agreement. But the Agreement's scope is not limited to the precise product area or market segment in which she worked or even just the vendors with whom she engaged while at Noble. It is broader, and it prohibits her from performing "the same or substantially similar services" as she provided to Noble for a competitor like SupplyCore.

Based on a comparison of her duties at both places, as already noted, the court concludes that she has substantially similar duties to those she had at Noble. In particular, as Noble explains, she was responsible for vendor management while at Noble, and she provides vendor management services to SupplyCore in her current position. Moreover, it is plain that the work she is doing actually competes with Noble. Thus, Noble also has made a strong showing that Curry likely breached the non-competition portion of the agreement.

The court concludes that Noble has made, for preliminary injunction purposes, a clear showing that it is likely to succeed on the merits in that the non-competition covenant was a legally enforceable obligation held by Curry, that she violated that obligation by providing to SupplyCore—who directly competes with Noble—services that were substantially similar to those she performed for Noble, and that in doing so, she at least likely caused damages to Noble, as explained in further detail in the next section. *See Filak*, 594 S.E.2d at 619. Thus, Noble has satisfied the first requirement to obtain preliminary injunctive relief.

### 2. Irreparable harm

Second, *Winter* requires that the party requesting injunctive relief demonstrate that it is likely it will suffer irreparable harm absent the preliminary injunction. 555 U.S. at 22–23. The harm to be prevented must be of an immediate nature and not simply a remote possibility. *In re Microsoft Corp. Antitrust Litig.*, 333 F.3d at 525. A plaintiff must overcome the presumption

that a preliminary injunction will not issue when the harm suffered can be remedied by money damages at the time of judgment. *Hughes Network Sys., Inc. v. InterDigital Commc'ns Corp.*, 17 F.3d 691, 693 (4th Cir. 1994). The loss of goodwill or industry reputation "is a well-recognized basis for finding irreparable harm." *MicroAire Surgical Instruments, LLC v. Arthrex, Inc.*, 726 F. Supp. 2d 604, 635 (W.D. Va. 2010). Courts in the Fourth Circuit have held that "loss of clients' goodwill and future business [is] difficult, if not impossible, to measure fully." *Fid. Global Brokerage Grp., Inc. v. Gray*, No. 1:10-cv-1255, 2010 WL 4646039, at *3 (E.D. Va. Nov. 9, 2010) (citation omitted).

Noble has shown that it is likely to suffer irreparable harm in the absence of an injunction. Curry counters that any harm is speculative and not imminent, pointing out that Noble has not alleged that it lost a single customer or vendor, nor lost any goodwill, based on anything she has done. (Opp'n 15.) The court disagrees. First of all, several vendor contacts in Curry's LinkedIn network represented that they would connect with Curry to do business with SupplyCore. Although Curry avers that some of these vendors were already doing business with SupplyCore before her employment began, their comments exemplify the clear—and likely—potential for lost business. And a potential loss of business in the face of violations of restrictive covenants can support a preliminary injunction. *See W. Indus.-N., LLC v. Lessard*, No. 1:12cv177, 2012 WL 966028, at *6 & n.5 (E.D. Va. Mar. 21, 2012) (noting that Fourth Circuit case law holds that "harm to customer goodwill and loss of future business are sufficient for purposes of demonstrating irreparable harm" and that such harms were likely to occur if the defendant violated his non-competition agreement with the plaintiff, his former employer).

Noble also points to the provision of the Agreement in which Curry agrees with the "grant of a preliminary or permanent order enjoining further threatened or actual breaches of the

14

Agreement." (Mem. Supp. Mot. for Prelim. Inj. 20, Dkt. No. 4 (quoting Agreement ¶ 7).) Noble argues that provision is a contractual agreement that a breach of the agreement constitutes irreparable harm to Noble. (*Id.*) Under Virginia law, such provisions in restrictive covenants are enforceable and can satisfy the irreparable harm element. Other courts have credited such provisions when granting preliminary injunctions. *E.g.*, *O'Sullivan Films, Inc. v. Neaves*, 352 F. Supp. 3d 617, 628 (W.D. Va. 2018) (holding that provisions in an agreement entitling the plaintiff to proceed "without the need to prove actual damages" and stating that "temporary and permanent injunctive relief" is appropriate for a breach satisfy the irreparable injury element and show that remedies available at law are inadequate).

For all of these reasons, the court concludes that Noble has demonstrated that it is likely to suffer irreparable harm absent the preliminary injunction.

### 3. Balance of equities

Third, in considering a request for preliminary injunctive relief, a court must weigh the balance of equities between the parties. *See Winter*, 555 U.S. at 20; *see also Trump v. Int'l Refugee Assistance Project*, 582 U.S. 571, 580 (2017) ("The purpose of . . . interim equitable relief is not to conclusively determine the rights of the parties, but to balance the equities as the litigation moves forward.") (citation omitted).

The court finds that the balance of equities weighs in favor of Noble, who bargained for the enforceable restriction, and who stands to lose business if Curry continues in her present position. Curry argues that the balance of equities weighs in her favor because a preliminary injunction could have the effect of preventing her from earning a living for a year. But Curry's argument misrepresents the reach of both the restrictive covenant at issue and the preliminary injunctive relief Noble seeks. Noble does not seek to prevent her from working for SupplyCore

at all; it simply seeks to prohibit her from engaging in competitive work that is the same or similar to the work she performed for it.

The court weighs the harm to Curry if she were prevented from providing services she performed for Noble to SupplyCore and concludes that it does not substantially limit her employment options. She may not work in a vendor management capacity for SupplyCore and may not perform the same or substantially similar duties as she performed for Noble if they compete with SupplyCore, but she is not prohibited from working for SupplyCore in some other capacity nor is she prevented from obtaining employment in some other industry.

Further, in the Agreement, Curry also agreed that the Agreement did not unduly restrict her from earning a living. In particular, Paragraph 5 includes Curry's agreeing that "Employee has ample opportunity to obtain employment without violating the terms of this Agreement, and without suffering hardship or duress" and that "neither [she] nor [her] family will suffer irreparable harm as a result of the enforcement of the provisions set forth in this paragraph and in this Agreement." (Agreement ¶ 5.)[7]

Thus, the court concludes that the balance tips in Noble's favor.

4. **The public interest**

Finally, before granting a motion for preliminary injunction, the court must find that such relief is in the public interest. *See Winter*, 555 U.S. at 20. The public has an interest in the enforcement of valid contracts, *Dynamic Aviation Grp. Inc. v. Dynamic Int'l Airways, LLC*, No. 5:15-cv-58, 2016 WL 1247220, at *31 (W.D. Va. Mar. 24, 2016), and in protecting the rights of

---

[7] Curry attempts to walk this back in her declaration, where she states that she attempted and was unsuccessful in obtaining employment outside of her current field. (Curry Decl. ¶¶ 48–49.) She further states that just the lawsuit itself and the possibility of losing her job have been stressful to her as the primary breadwinner in her family and as a mother to a young child. (*Id.*) But it was her choice to accept this particular job at SupplyCore, and, as already noted, Noble is entitled to the benefit of its bargain, after investing years of training into Curry, as well as giving her access to confidential information.

16

local businesses, *Bowe Bell & Howell Co. v. Harris*, 145 F. App'x 401, 404 (4th Cir. 2005). Having found that there is a strong likelihood that the contract is enforceable, the court concludes that the public interest supports a preliminary injunction in this case. Curry's argument to the contrary relies on a finding that the non-complete is disfavored or violative of public policy (Opp'n 16), which finding the court does not make.

Because Noble has satisfied all four *Winter* factors, the court will grant its motion for preliminary injunction.

### 5. Remedy

As a remedy, Noble seeks to enjoin Curry from—in general terms—breaching the Agreement. But she already has a legal duty not to do so, and Noble has not presented clear and convincing evidence that she has violated any other provision of the agreement, other than the non-competition covenant. And those other provisions (as Noble acknowledges in its opposition to the motion to dismiss) are not at issue here. Accordingly, the court will enjoin Curry from violating the non-competition covenant and will enjoin her from working for SupplyCore in her current capacity.

### 6. Bond

Rule 65(c) of the Federal Rules of Civil Procedure directs that a court "may issue a preliminary injunction . . . only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." The Fourth Circuit has explained that this rule "is mandatory and unambiguous," *Hoechst Diafoil Co. v. Nan Ya Plastics Corp.*, 174 F.3d 411, 421 (4th Cir. 1999), and so a district court's "[f]ailure to require a bond before granting preliminary injunctive relief is reversible error." *Md. Dep't of Human Res. v. U.S. Dep't of Agric.*, 976 F.2d 1462, 1483 (4th

Cir. 1992). The amount of the bond, however, is within the court's discretion, and the court may even choose to set the bond amount at zero in an appropriate case. *Id.* at 1483 n.23.

No party has presented any specific evidence as to the likely financial impact of a preliminary injunction on Curry. Moreover, the Agreement itself states that no bond shall be required. (Agreement ¶ 7 (acknowledging that "the Company shall be entitled" to injunctive relief "without the need to post a bond or other security").) In the absence of more information, and given Curry's contractual waiver of the bond requirement, the court will set a nominal bond of $500 at this time, and the relief ordered in this preliminary injunction will be effective as of the posting of that bond with the clerk of this court. In the event that additional information is presented to the court regarding the damages likely to be sustained by Curry "if [she] is found to have been wrongfully enjoined," Fed. R. Civ. P. 65(c), the court may reconsider the bond amount.

### III.   CONCLUSION

For the reasons stated above, Noble Supply's motion for preliminary injunction as to its breach of contract claim (Dkt. No. 3) is GRANTED. It is hereby ORDERED that, pending the outcome of this litigation, defendant Rebecca Curry is hereby ENJOINED, for a period of twelve months from the date of this order, from:

1. working for SupplyCore Inc. in the position of Director of Vendor Management & Supply Chain; and

2. engaging in the same or substantially similar services or work as she performed for Noble for herself, or any other business or entity, that is competitive with the business of Noble, within the geographic area identified in the Agreement.

This order shall be effective only after Noble has obtained and posted with the clerk of

the court a certified surety bond in the amount of five hundred dollars ($500.00).

It is further ORDERED that the parties shall notify this court, not later than fifteen days after entry of this order, as to whether they agree to participate in a court-assisted settlement conference with the assigned magistrate judge. If they both agree, the court will refer the matter to the magistrate judge to conduct that conference.

The clerk is directed to send a copy of this memorandum opinion and order to all counsel of record.

Entered: December 7, 2023.

/s/ Elizabeth K. Dillon
Elizabeth K. Dillon
United States District Judge