IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
Harrisonburg Division

---

NOBLE SUPPLY & LOGISTICS, LLC,

    Plaintiff,

v.                                                      Case No.: 5:23-cv-00065-EKD

REBECCA CURRY,

    Defendant.

---

**DEFENDANT'S MEMORANDUM OF LAW OPPOSING
PLAINTIFF'S MOTION FOR INJUNCTION PENDING APPEAL**

---

      After reaping the benefits of an admittedly overbroad Temporary Restraining Order for over five months, and a narrowed TRO for four additional months, Noble is again before the Court asking for injunctive relief pending appeal. Without a shred of supporting evidence, Noble hyperbolizes that some imaginary injustice will occur unless "this Court enter[s] an injunction reinstating the now-vacated TRO pending that appeal." (Dkt. 80 at 1). But in order to grant the requested relief, the Court must believe that the noncompete provision does not say what it says, that Noble's counsel did not argue what he argued, and that Noble did not waive what it explicitly waived on the record. Noble's entire argument is a blatant attempt to gaslight the Court into a reversal of its well-reasoned decision that it reached after careful consideration of the evidence. (Dkt. 73 & 74). The true injustice here would be indulging Noble's nonsense and further restricting and harming Ms. Curry whom the Court found "to be honest, credible, and forthright." (Dkt. 73 at 7, n. 7). Whatever else can be said about this case, none of those adjectives apply to Noble or its shifting legal position.

1

Moreover, with over five months of the overbroad TRO, and an additional four months of the narrowed TRO, Noble would only be entitled to a maximum of three months' additional protection – *had it won*. Those three months will run before the Fourth Circuit briefing is complete. Imagine the absurdity of a party losing a motion and being awarded all of the relief that it could have received (and actually more due to the admittedly overbroad initial TRO) even though it *lost* and then having the audacity to seek more: that is Noble in this case. Noble's hands are unclean, and it has already received more relief than that to which it was entitled – twice. As the Court recognized, "the equities here favor Curry" because Noble received the benefit "of an admittedly overbroad injunction" to which it never was entitled. (Dkt. 73 at 23). The Court should see the motion for what it is, and summarily deny it.

## I.    ARGUMENT

### A. Noble has not Demonstrated That it is Entitled to Injunctive Relief Pending Appeal.

Noble cannot demonstrate that it is entitled to relief pending appeal. A court considers four factors when determining whether to grant relief pending appeal: "(1) whether the applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Nken v. Holder*, 556 U.S. 418, 434 (2009) (*citing Hilton v. Braunskill*, 481 U.S. 770, 776 (1987)). "A stay is not a matter of right, even if irreparable injury might otherwise result." *Id.* at 434 (quoting *Virginian Ry. Co. v. United States*, 272 U.S. 658, 672). Noble meets none of them.

### B. Noble Has Not Shown Likelihood of Success on the Merits

"[T]he burden rests on Noble to show that the restriction extends no greater than necessary to protect its legitimate business interests, is not unduly burdensome on Curry's ability to earn a

2

living, and does not offend sound public policy." Memorandum Opinion, ECF No. 73, at 16. "[A noncompete's] validity is a 'threshold question,' and if a noncompete agreement is invalid, the court need not consider whether a party in fact breached the agreement." *Power Home Solar, LLC v. Sigora Solar, LLC*, 2021 WL 3856459 (WD VA 2021) at * 5 (quoting *O'Sullivan Films, Inc. v. Neaves*, 352 F. Supp. 3d 617, 623 (WD Vir. 2018)).

Factors bearing on the reasonableness of a restrictive covenant include its function, geographic scope, and duration, *Simmons v. Miller*, 544 S.E.2d 666, 678 (Va. 2001), which the court should "assess . . . together rather than as distinct inquiries." *Preferred Sys. Solutions, Inc. v. GP Consulting, LLC*, 732 S.E.2d 676, 681 (Va. 2012).

### i.     The Non-Compete's Duration

Noble took great pains to note that restrictive covenants are not subject to a Motion to Dismiss because they are not to be analyzed "in a vacuum." Plt. Opp. to Mtn. to Dismiss, ECF No. 29, at ps. 7, 14. Then, Noble promptly considered the duration element in a vacuum. *Id.* at 11 (arguing Virginia courts routinely hold agreements with longer terms to be reasonable). As Ms. Curry has argued consistently throughout this litigation, it is incumbent upon Noble to articulate *why* a one year term is reasonable under the unique facts of this case. Noble is perfectly fine with others in Ms. Curry's position – and who had access to precisely the same customers and information – having no noncompetes or noncompetes of half of Ms. Curry's duration. Noble has not and cannot explain why a year for her is reasonable.

The best evidence of what is reasonable are Noble's own decisions and actions. A one-year term cannot be reasonable if Noble is content with similarly situated employees having no non-competes at all.   Even if the Court were to disregard the real-world conditions and commercial

3

realties and ignore the lack of comparable restrictive covenants for everyone else in Noble's workforce, there still is no evidence suggesting a need for Ms. Curry to have such a restriction.

### ii.     The Functional Restriction

The functional restriction is overbroad. The noncompete unambiguously seeks to limit Ms. Curry from performing *any* job that she ever performed for Noble or TSSi, without any time limitation. Even if it were ambiguous, and it is not, Noble's own shifting position makes clear that there are at least two interpretations of the noncompete and, by Noble's own admission, one of them is overbroad. Where a non-compete is susceptible to two or more differing interpretations, one of which is functionally overbroad, and thus unenforceable, the clause fails even though it may be reasonable as applied to the specific circumstances presented. (*See Pais v. Automation Products*, 36 Va. Cir. 230, 257-58 (1995)).

Noble has taken two drastically different positions in this case.[1] At the TRO hearing, Noble argued that the non-compete unambiguously related to any job that Ms. Curry did at TSSi or Noble, regardless of product category. TRO Hr'g Tr. at 10-11, 33.

Noble sold the Court on this position and the Court granted a TRO on that basis. Then, Noble's 30(b)(6) witness testified exactly the opposite: that Noble only needs protection from Ms. Curry in the tactical/medical category. MPI Hr'g Tr. at p. 199.

Because of this, Noble drastically altered its argument at the MPI hearing. Noble argued that the same contract that it previously swore was far broader, now only allows Noble to keep Ms. Curry out of the tactical/medical category. *Id.* at 11. The Court euphemistically referred to Noble's changing position at the MPI hearing as a "moving target." *Id.* at 213.[2]

---

[1] Its third position – taken during briefing post MPI – is a different interpretation, but it is a riff off of the MPI.

[2] *See, also* Memorandum Opinion, ECF No. 73, at 22. ("To be sure, the court was surprised when, at the MPI hearing, Noble indicated a willingness to limit the temporary restraining order to restrain Curry only from "perform[ing] . . . ."

4

Then, in post-hearing briefing, Noble again "refined" its argument, reinterpreting the noncompete language for a third time. This time, Noble read the noncompete to only prohibit Ms. Curry from competing for work she did at Noble, *not TSSi*. Pltf. Post-Hearing Brief, ECF No. 68, at p. 6. The Court correctly saw the folly of this theory and promptly dispatched it. Memorandum Opinion, ECF No. 73, at 9.

Noble's new positions were not the result of any new evidence that arose in discovery. The only "new" evidence was that Noble's 30(b)(6) witness testified in her deposition and at the MPI hearing that Noble only claimed a legitimate business interest against Ms. Curry competing in the tactical/medical category. Noble knew this from the outset – it just tactically disregarded this known category limitation, overreached and sought to punish Ms. Curry with a broader restriction than it believed was necessary. It is inconceivable that Noble's counsel would not have discussed this essential element of its claim with the *very witness that signed the Verified Complaint.* This information was not new. Noble took a calculated risk that the information would not come to light when it sought the overbroad TRO. Noble lost, and cannot now meet its burden to demonstrate that the non-compete is narrowly drawn to protect its legitimate business interests. Noble sought and obtained an admittedly unnecessary restriction, engaged in textbook anti-competitive conduct, and should not be rewarded or absolved of the inevitable consequences of its actions.

Nor can Noble's new – and tortured – reading of the non-compete save it. Noble argued for the first time in the post MPI hearing brief that the non-compete only related to Ms. Curry's time at Noble – not at TSSi. Pltf. Post-Hearing Brief, ECF No. 68, at p. 6. This reading is contrary to the plain language of the noncompete and takes a "blue pencil" to Noble's own agreement in an

---

competing work in the tactical and medical sector, with certain additional restrictions, and that it did not seek to enjoin her from performing vendor management in other sectors. Noble's position at the TRO hearing was that the agreement was much broader, and the Court's temporary restraining order adopted that position.")

5

attempt to salvage the overbroad provision. But as the Court noted, Noble's position is without authority, Noble is substituted for TSSi for all purposes in the contract, and Noble's reading would lead to absurd results (i.e., an employee under a noncompete could quit the day before a sale and be free from a noncompete obligation). Memorandum Opinion, ECF No. 73, at 10.

One truth remains constant. In the end, one of two things must be true. Either Noble took two (or three) reasonable positions, one of which it now acknowledges was overbroad, or its first position was unreasonable and it obtained the admittedly overbroad TRO – and its revised cousin – under false pretenses. Either way, Noble loses, and it is not entitled to the relief requested.

## C. Noble Waived the Argument it Now Makes Regarding Irreparable Harm.

Noble's argument that it will suffer a loss of vendor goodwill is disingenuous and fatally flawed. Having no evidence of harm, Noble travels back in time to before the evidentiary hearing and seeks to use the Court's *initial TRO* as the basis for its claims. Noble says "This Court has already found that Curry's breach of the noncompete is likely to cause irreparable harm.[citations omitted] As this Court recognized, '[t]he loss of goodwill is a well-recognized basis for finding irreparable harm.'" Pl. Brief, ECF. No. 80-1, at 5. But that argument only works if the party asserting it (1) follows up with evidence supporting its position and (2) has not waived the argument on the record. Neither happened here. Noble not only failed to present any such evidence, but also expressly waived the argument during the evidentiary hearing. The Court's cited language came before this hearing where Noble presented nothing and waived the argument.

In addition to having no such evidence, Noble cannot claim that it suffered a loss of vendor goodwill. During the evidentiary hearing, Ms. Curry sought to introduce evidence that Noble was the source of any vendor issues and had only itself to blame. Specifically, Noble was chronically late in paying its vendors, and that the slow pay issue was seriously impacting Noble's vendor

6

goodwill. Some vendors ceased doing business with Noble, others altered their payment terms, required cash payments or required Noble to bring its deficiency current. The issues negatively affected vendor management across all six categories on a daily basis.

The Court stopped the questioning and said:

THE COURT: Well, Mr. Kubiak, what you just said there concerns me a little bit because I don't know that it matters to this court why your client left.

\* \* \*

MR KUBIAK: I'm giving you some color. I bring up the slow pay issue, Your Honor, **because if, in fact, Noble is going to make the argument that somehow Ms. Curry's leaving impacted vendor goodwill, I believe that the Court also has the ability to hear that which Noble self-inflicted with respect to vendor goodwill.**

THE COURT: Do you intend to make that argument?

MR. FARLEY: **No, Your Honor. As I mentioned in my opening, we don't have any evidence that a vendor left. So we're not going to present any evidence.**

THE COURT: **It's represented that they are not making that argument.** If they try to, you can call it to my attention.

(MPI Hr'g Tr., at 24:8-25 (emphasis added)).

Noble explicitly waived any argument that it has – or will – suffer a diminution of vendor goodwill. Yet despite its overt waiver, Noble brought up the loss of goodwill no less than *seven times* in its brief.[3] Perhaps more galling is Noble's ostrich-like failure to address the waiver issue – at all. Nowhere in its brief does Noble address the waiver. By its counsel's own admission, Noble has not and will not suffer a loss of vendors or goodwill. MPI Hr'g Tr. at 24:8-25. It is completely frivolous for Noble to now rely on an argument that it explicitly waived on the record.

---

[3] See, Plaintiff's Brief Pages 2 of 9; 5 of 9 (3 times); 6 of 9 (twice); and 8 of 9.

## D. The Balance of Equities Favors Ms. Curry.

Noble argues – apparently with a straight face – that Ms. "Curry cannot seriously dispute that she will not be substantially injured by an injunction pending appeal that requires nothing more of her than she agreed to when she began her employment at SupplyCore." Pl. Brief, ECF No. 80-1, at 7. But Ms. Curry has already been substantially injured by Noble. Noble conveniently forgets that it obtained an overbroad, ill gotten, TRO that remained in place for over five months. At the MPI hearing, Noble admitted that it was *never* entitled to that relief. As the Court recognized, the "admittedly overbroad" TRO harmed Ms. Curry because it "required Curry to change jobs and made her ineligible for a merit raise". (Dkt. 73 at 23) (citing MPI Hr'g Tr., p. 79-80). It stalled her career for an extended period of time. Then, and over Ms. Curry's objection, Noble received the benefit of a narrowed TRO for an *additional* four months. In the end, neither of these injunctions was proper, as the agreement is unenforceable. Noble has already received three quarters of the relief it would have received *had it won*.

*But it lost*, and is shamelessly seeking even more. The Court should deny this request.

## E. Public Policy Favors Ms. Curry

In Virginia, noncompetes are disfavored restraints on trade. The employer bears the burden of proving that the restraint is reasonable under the facts of the case. *Blue Ridge Anesthesia v. Gidick,* 239 Va. 369, 371-72, 389 S.E.2d 467, 468-69 (1990). Because restrictive covenants restrain trade, non-competition clauses are strictly construed against the employer. *Grant v. Carotek, Inc.,* 737 F.2d 410, 412 (4th Cir.1984).

Virginia courts take this view because covenants not to compete, by their nature, restrain competition, and accordingly curb the "fundamental right of individuals to seeks success in our free-enterprise society." 15-80 *Corbin on Contracts* §§ 80.1, 80.4 (2006) (stating that in entering

8

into a covenant not to compete, "[t]he parties' purpose is to impose a restraint upon the trade or commerce of third persons only insofar as being deprived of the opportunity to trade with the party to the contract who has voluntarily agreed to be restrained. In every case, the promisee's purpose, without doubt, is to rid itself of the competition of the promisor"); *see also Clinch Valley Physicians, Inc. v. Garcia,* 243 Va. 286, 289, 414 S.E.2d 599 (Va. 1992) (stating that because a covenant not to compete "restricts the employee in the exercise of a gainful occupation, it is a restraint in trade, and it is carefully examined and strictly construed").

Here, the Court correctly found that the noncompete was not narrowly tailored to protect the employer's legitimate business interests. The Court so found based primarily on the testimony of Noble's 30(b)(6) witness. Because it is unreasonable, the contract is void. Virginia has a public policy interest against enforcing unreasonable contracts. *Hawkins v. Fishbeck*, 301 F. Supp. 3d 650 (WD VA 2017). The Court should deny the requested relief.

## IV. CONCLUSION

For the reasons set forth above, Rebecca Curry respectfully requests that the Court deny Nobles request to reinstate the injunction pending appeal.

DATED: October 25, 2024.

                Respectfully submitted,

                /s/ Joshua F. P. Long
                King F. Tower (VSB No. 38767)
                king.tower@wrvblaw.com
                Joshua F.P. Long (VSB No. 65684)
                Josh.long@wrvblaw.com
                Woods Rogers Vandeventer Black PLC
                10 South Jefferson Street, Suite 1800
                Roanoke VA 24011
                Telephone: (540) 983-7600
                Facsimile (540) 983-7711

        Jeffrey A. Risch (Illinois ARDC NO: 627140)
        jrisch@amundsendavislaw.com
        Amundsen Davis, LLC
        3815 E. Main St., Suite A-1,
        St. Charles, IL 60174
        Telephone (630) 569-0079

        Craig A. Kubiak (WI SBN 1019273)
        ckubiak@amundsendavislaw.com
        Amundsen Davis, LLC
        2800 Enterprise Avenue
        Appleton, WI 54913
        Telephone: (920) 750-5049

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on this 25th day of October, 2024, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notice to all counsel of record.

        /s/ Joshua F. P. Long